WWR#06534010

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY AT LEXINGTON

| | |
|---|---|
| IN RE: | CASE NO. 07-52393 |
| MILDRED MARIE REEVES | CHAPTER 7 |
| | JUDGE SCOTT |
| DEBTOR | |

### RBS CITIZENS, N.A.'S
### MOTION FOR RELIEF FROM STAY
### AND ABANDONMENT
### AS TO 2004 KIA SEDONA

Now comes, RBS CITIZENS, N.A., secured Creditor in the above captioned proceeding, and pursuant to 11 U.S.C. § 362(d), moves this Court for an order terminating the stay and abandoning personal property to enable Creditor to recover and dispose of its collateral: 2004 K IA S EDONA.  Support for this Motion is set forth in the following Memorandum.  Movant further requests that the stay remains terminated in the event the debtor converts to a different chapter under the Bankruptcy Code.

WELTMAN, WEINBERG & REIS CO, L.P.A.

_____
John L. Day, Jr., (KY-17328) (OH-0003734)
Attorney for Creditor
525 Vine Street, Suite 800
Cincinnati, OH 45202
513-723-2206
jday@weltman.com

## MEMORANDUM

1. Jurisdiction over this matter is vested in this Court by virtue of 28 U.S.C Section 1334(b) and the general order of reference previously entered in this district.

2. This is a core proceeding under 28 U.S.C Section 157(b)(2)(G).

3. On May 13, 2004, Mildred Marie Reeves executed one installment loan note and security agreement for the purchase of the following: 2004 KIA SEDONA. Supporting loan documentation and Certificate of Title are attached hereto and made a part hereof.

4. As of the December 7, 2007, Debtor was obligated to RBS CITIZENS, N.A. on said obligation in the amount of $10,885.76. Debtor h as not made the required payments and the account is overdue and in default.

5. Secured Creditor would like to exercise its right to accelerate the balance due on this obligation, to repossess its collateral, sell the collateral, and apply the net proceeds to this obligation.

6. The NADA value of said vehicle 10,400.00. There is no equity in the collateral for unsecured creditors.

7. A copy of Movant's proof of claim is attached hereto.

WHEREFORE, for the reasons stated herein, RBS CITIZENS, N.A. respectfully requests that this Court terminate the stay as to 2004 KIA SEDONA and as to RBS CITIZENS, N.A. to permit secured creditor, its successors and assigns, to accelerate its balance due and exercise its contractual and state law remedies, including repossession of the collateral or foreclosure of the subject mortgage. Movant further requests that an order be issued wherein the trustee's interest in the subject collateral is abandoned. Movant requests further that the stay remain terminated in the event the debtor converts to a different chapter under the Bankruptcy Code.

WELTMAN, WEINBERG & REIS CO., L.P.A.

_/s/ John L. Day, Jr._
John L. Day, Jr. (KY-17328) (OH-0003734)
Attorney for Creditor

## NOTICE

Please take notice that unless a party in interest, within 15 days from the date of this motion, files a response to the motion and a request for and notice of hearing on such response, the enclosed order will be tendered to the Court and may be entered without a hearing on the motion.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion for relief from stay has been sent this 28 day of January, 2008 by ordinary mail or by electronic or email notification to the following:

Rex Duff
P.O. Box 27
Garfield, KY 40140

MILDRED MARIE REEVES
160 Sunset Drive
Clay City, KY 40312

James D. Lyon, Trustee
209 East High Street
Lexington, KY 40507

Office of the U. S. Trustee
100 East Vine Street, Suite 803
Lexington, KY 40507

John L. Day, Jr., (KY-17328) (OH-0003734)

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF KENTUCKY AT LEXINGTON | PROOF OF CLAIM WWR# 06534010 |
|---|---|
| **Name of Debtor:** MILDRED MARIE REEVES | **Case Number:** 07-52393 |

NOTE: *This form should not be used to make a claim for administrative expenses arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom Debtor owes money or property):**
RBS CITIZENS, N.A.

**Name and addresses where notices should be sent:**
RBS CITIZENS, N.A.
480 Jefferson Blvd., #RJE135
Warwick, RI  02886
**Telephone number:**
(513) 723-2200 (WWR)

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**
RBS CITIZENS, N.A.
480 Jefferson Blvd., #RJE135
Warwick, RI  02886
**Telephone number:**
(513) 723-2200 (WWR)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount Of Claim At Time Case Filed:**    $10,885.76

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
    (See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
**Nature of property or right of setoff:**  ☐ Real Estate   ☒ Motor Vehicle   ☐ Other
**Describe:** 2004 KIA SEDONA
**Value of Property:** $_____    **Annual Interest Rate** _____%
Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $10,885.76   **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date: January 25, 2008 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | For Court Use Only |
|---|---|---|

/S/ John L. Day, Jr.
John L. Day, Jr., (KY-17328) (OH-0003734) Weltman, Weinberg & Reis Co., L.P.A.



**Charter One Auto Finance Corp.**   Consumer Loan Note and Security Agreement   Date 05/13/2004

In this document, the word "Agreement" means the Consumer Loan Note and Security Agreement. In this Agreement, the words "you" and "your" mean each borrower who signs the Agreement and each other person or legal entity, including guarantors, endorsers and sureties who agree to pay this Agreement. The words "we", "us," and "our" refer to Charter One Auto Finance Corp. ("Lender") whose main office is located at 226 East Main Street, Suite 300, Rochester, New York 14604, its successors and assigns.

You agree to use the proceeds of this loan to purchase the Motor Vehicle ("Property") and additional products described below from the Seller, __CAR TOWN KIA USA__. Seller has no authority to make any agreements on our behalf not contained in this Agreement.

**PROMISE TO PAY:** For value received under this Agreement, you promise to pay to us the principal loan amount of $ __23830.56__ U.S., plus interest at the rate of __4.74__% per year. Interest accrues on a daily basis. You agree to pay this loan according to the payment schedule and the late charge provisions shown in the Truth-in-Lending Disclosures. You also agree to pay any additional amounts, which may become due, according to the terms and conditions of this Agreement.

**PLACE OF PAYMENT:** You will make your payments to Charter One Auto Finance Corp. at P.O. Box 20361, Rochester, New York 14602 or at any other address we designate to you in writing. Your payment will not be effective until it is actually received by us. You must mail your payment early enough so that it is actually received by us on or before the due date.

| YEAR | NEW / USED | MAKE | MODEL | CYL | BODY STYLE | VIN |
|---|---|---|---|---|---|---|
| 2004 | ☒NEW ☐USED | KIA | SEDONA | 6 | SUV | KNDUP131646548210 |

**SECURITY AGREEMENT:** To secure your payment and performance under the terms of this Agreement, you give us a security interest in the Vehicle and all accessions to the Vehicle, including any attachments, accessories or equipment installed in or affixed to the Vehicle, together called Property, and all proceeds of the Property. Our interest will not extend to consumer goods, other than goods that are installed in or affixed to the Vehicle, unless you acquire rights to the consumer goods within 10 days after you enter into this Agreement.

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. |
|---|---|---|---|
| 4.87 % | $ 3690.68 | $ 23735.56 | $ 27426.24 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 380.92 | Monthly, Beginning: 06/12/2004 |

**Security:** You are giving us a security interest in the Property being purchased.
**Late Charge:** If a payment is more than 10 days late, you will be charged 10% of the payment up to a maximum of $40.00.
**Prepayment:** If you pay off early, you may have to pay a penalty.
**Additional Provisions:** See the rest of this Agreement, including the reverse side, for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.
"e" means estimate.

### ITEMIZATION OF AMOUNT FINANCED
You authorize us to pay the following amounts on your behalf:

1. Amount Given To You                                   $ __N/A__ (1)
2. Amount Paid on Your Account                           $ __N/A__ (2)
3. To __CAR TOWN KIA USA__ (Seller)                     $ __22895.56__
4. Other Charges including amounts paid to others on your behalf:
   A. Fees and taxes paid to public officials            $ __56.00__
   B. To _____ for Life Insurance                 $ __N/A__
      To _____ for Disability Insurance           $ __N/A__
   C. VSI Insurance                                      $ __N/A__
   D. To __ETHOS__ for Gap                               $ __450.00__
   E. To _____ for Service Contract               $ __N/A__
   F. To _____ for Loan/Lease Payoff              $ __N/A__
   G. To _____ for _____                   $ __N/A__
   H. To __CAR TOWN KIA__ for __DOC FEE__               $ __209.00__
   Total other charges & amounts paid to others on
   your behalf                                           $ __840.00__ (4)
5. Plus: Loan processing fee paid to Lender              $ __35.00__ (5)
6. Less: Prepaid Finance Charge                          $ __35.00__ (6)
7. Total Amount Financed (1+2+3+4+5-6)                   $ __23735.56__ (7)

**You understand that the Seller may retain or receive a portion of these amounts.

**Purchase Breakdown:**

1. Cash Price (including $ __1357.56__ sales tax)        $ __24895.56__
2. Total Down Payment
   Trade-in
   (year)  (make)  (model)
   Gross Trade-in Allowance                              $ __N/A__
   Less payoff made by Seller                            $ __N/A__
   Equals Net Trade-in                                   $ __.00__
   + Cash                                                $ __N/A__
   + Other __REBATE__                                    $ __2000.00__
   Total Down Payment (if negative, enter "0" & see 4F above)  $ __2000.00__
3. Unpaid Balance of Cash Price (1 - 2)                  $ __22895.56__

**CREDIT INSURANCE IS NOT REQUIRED:**
  Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost.
  You are entitled to a copy of the policy or certificate of insurance within 30 days after credit is extended.
  You ARE NOT required to buy credit life insurance or credit accident and health insurance from any particular company or agent.

If you buy credit life insurance, the proceeds will be used to reduce or pay off your unpaid loan or indebtedness when you die. Any insurance proceeds in excess of the amount required to pay off the loan will be paid to your beneficiary or estate.
READ your policy or certificate CAREFULLY for what the policy DOES NOT cover. For example: Some policies do not pay disability benefits unless you are disabled for 14 or 30 days or if you have a pre-existing condition. Some policies will not provide coverage if you are over age 65. See the policy for details on these. You may not be eligible for credit accident and health insurance unless you now work at least 30 hours per week.

| Coverage | Premium | Term | Insurance Wanted |
|---|---|---|---|
| Credit Life: ☐Single ☐Joint | $ __N/A__ | | ☐Yes ☒No |
| Credit Disability: ☐Single | $ __N/A__ | | ☐Yes ☒No |

You want the credit insurance coverage(s) you have indicated above:

_____    _____
Borrower                      Co-Borrower

**PROPERTY INSURANCE:**
Name of Insured: __VERNON E REEVES__
Registrant: _____
Physical Damage and Comp. Deductible $ __N/A__
Collision Deductible: $ __N/A__
Insurance Company: _____
Effective Date: _____
Policy #: _____
Telephone Number: _____
Agent Name: _____
Address: _____

**VENDOR'S SINGLE INTEREST INSURANCE:** If checked X, you must obtain Vendor's Single Interest Insurance ("VSI") for our sole protection; your interest is not covered by this insurance. You may obtain VSI from anyone you want, subject to our reasonable approval. If obtained through us, the cost of VSI insurance is shown in the "Itemization of Amount Financed" in section 4C labeled "VSI Insurance". The term of VSI coverage is indefinite; it may be cancelled by us or the VSI Insurance Company.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND MOTOR VEHICLE DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

**SERVICE CONTRACT (optional)** Although you are not required to do so, by signing below, you request a Service Contract and authorize the cost as shown in item 4E of the "Itemization of the Amount Financed" to be included in the balance payable under this Agreement. The Service Contract covers the repair of certain major breakdowns of the Property and related expenses. You understand you must refer to the Service Contract for details about coverage and duration.

Service Contract Price $ __N/A__
Service Contract Administrator _____   Term: _____
Borrower _____                Co-Borrower _____

**GAP COVERAGE (optional)** Gap coverage is not required to obtain credit and you may purchase it from the company of your choice. By signing below, you request Gap coverage and authorize the cost, as shown in item 4D of the "Itemization of Amount Financed," to be included in the balance payable under this Agreement.
Company __ETHOS__
Borrower _/s/ Vernon E Reeves/_       Co-Borrower _/s/ Mildred M Reeves/_

**BY SIGNING BELOW YOU AGREE TO THE TERMS ON BOTH SIDES OF THIS LOAN AGREEMENT AND ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT ON TODAY'S DATE, WITH ALL BLANKS SUITABLY FILLED IN.**

Dated this __13__ day of __MAY__, 2 __2004__
Signature of Borrower: _/s/ Vernon E Reeves/_    Signature of Co-Borrower: _/s/ Mildred M Reeves/_
Type or print name: __VERNON E REEVES__           Type or print name: __MILDRED M REEVES__
Address: __160 SUNSET DR__                         Address: _____
City: __CLAY CITY__ State: __KY__ Zip: __40311__   City: _____ State: ____ Zip: ____

**NOTICE TO CO-SIGNER**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay the debt if you have to and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs which increase this amount. Charter One Auto Finance Corp. can collect this debt from you without first trying to collect from the borrower. Charter One Auto Finance Corp. can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

Co-Signer _____                             Date _____

WHITE - ORIGINAL TO COAF   CANARY - Borrower's Copy   PINK - Co-Borrower's Copy   GOLDENROD - Dealer's Copy     AF089 (4/03)

**GENERAL TERMS:** By signing on the front, you also agree to the additional terms contained on the back of the Agreement.

We do not intend to charge or collect, and you do not agree to pay, any interest or fee that is more than the maximum amount permitted for this loan by state or federal law. If you pay interest or a fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

If any section or provision of this Agreement is found to be invalid, the other terms will remain in effect.

**FINANCE CHARGE:** This is a simple interest note. Interest shall be computed on the outstanding daily principal balance, based on the actual number of days in the year, but shall be charged for the actual number of days between payments. The Finance Charge and Schedule of Payments shown in the Truth-in-Lending Disclosure were based on the assumption that each payment will be made on its due date. Late payments or payments less than the full amount will result in additional finance charges. Payments will result in less interest. The amount of the increase or decrease in the Finance Charge, will be reflected in the final payment. Payments will be applied in the following order: to (a) finance charges; (b) unpaid principal; (c) unpaid late charges; and (d) other fees and charges.

**SECURITY INTEREST:** You give us a security interest under applicable law in the Property. Our security interest also covers (1) proceeds and unearned premiums of any Property insurance; (2) unearned premiums and refunds of any additional products if their cost is included in this loan; and (3) the products and proceeds of the foregoing. If the proceeds of this loan are used to purchase the Property, you agree that this is a purchase money security interest. You agree to execute all documents necessary to perfect our security interest in the Property and to deliver to us, as allowed by law, any documents of title to the Property with our lien noted thereon.

**OWNERSHIP AND DUTIES:** By giving us a security interest in the Property, you represent and agree to the following:
A. You will defend our interest in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
B. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed in this Agreement.
D. You will not attempt to sell the Property (unless it is property identified as inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
E. You will pay all taxes and assessments on the Property as they become due.
F. You will notify us of any loss or damage to the Property.

**POST-MATURITY INTEREST:** Interest will accrue on the balance remaining unpaid after final maturity at the rate agreed to in this Agreement, or the maximum rate allowed by law. Final maturity occurs:
A. On the date of the last scheduled payment of principal; or
B. On the date we accelerate the due date of this loan (demand immediate payment).

**ADDITIONAL CHARGES AND FEES:** You will be assessed additional charges or fees for late payments, early payoff, and other items as set forth in this Agreement. These charges will be added to the amount you owe us, but we will not add interest on them.

**LOAN PROCESSING FEE:** Any loan processing fee charged for this loan is shown in the "Itemization of Amount Financed" section of this Agreement. The loan processing fee is a charge for making this loan and is not refundable.

**LATE CHARGE:** You agree to pay a late charge for any payment not made within 10 days of its due date. The late charge will be 10% of the payment, not to exceed $40.00.

**DISHONORED CHECK CHARGE:** You agree to pay us a dishonored check charge of $25.00 for each check or similar payment instrument that is dishonored or returned unpaid for any reason. This charge will be in addition to any other charges provided in this Agreement.

**PREPAYMENT:** You may prepay, in full or in part, the amount owed under the PROMISE TO PAY section at any time. If you prepay the Agreement in full within 36 months of the date of this Agreement, we will charge you a prepayment fee of 1% of the then outstanding principal of the loan which will be due and payable at that time. If you prepay the loan in part, you agree to continue to make regularly scheduled payments until all amounts due under this Agreement are paid.

If you have elected to purchase optional credit insurance, you may be entitled to a partial refund of your premium if you prepay your total outstanding balance. Refunds of any prepaid, unearned insurance premiums may be obtained from the insurance company named in your policy or certificate of insurance.

**DEFERRAL:** If you agree to a deferral of any payment(s), we may, at our option, defer the payment(s) and charge you our deferral fee for each month your loan is deferred. We will, however, continue to earn interest on the unpaid principal balance. Any such postponement will not result in an extension of any insurance coverage under this Agreement.

**PROPERTY INSURANCE:** You must maintain property insurance insuring the Property against fire, theft, damage, collision and other hazards customarily insured against for property of that kind until all sums due us are paid in full. You must insure yourself and us for the term of this Agreement against loss or damage to the Property with a policy acceptable to us. This policy may be obtained from an insurer and agent of your choice that is authorized to sell such insurance in the state in which the Property is registered or titled and is reasonably acceptable to us. The insurance you maintain will include comprehensive fire, theft and collision coverage, insuring the Property in an amount covering the Property's fair market value with a maximum deductible of $500. The insurance company must provide us with at least 10 days prior written notice of any cancellation or reduction in coverage. You must deliver a copy of the insurance policy or policies to us, together with any loss-payable clauses in favor of us and evidence that you have paid the premiums for such insurance. You authorize us as your attorney-in-fact to make and settle insurance claims and to endorse and collect insurance proceeds. You agree that we may, at our option, apply any insurance proceeds collected by us to either (i) the repair and restoration of the Property, or (ii) the then outstanding balance on your loan. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference as described on the front of this Agreement.

If you fail to obtain or maintain this insurance, or fail to name us as a loss payee, we may, but are not required to, obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Agreement. We will add the cost of this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn interest from the date paid at the rate described in the PROMISE TO PAY section until paid in full.

**OPTIONAL INSURANCE or SERVICE CONTRACTS:** This Agreement may contain charges for optional insurance or service contracts. If the Property is repossessed, you agree that we may claim benefits under these contracts and terminate them to obtain refunds for unearned charges or premiums which we may, at our option, apply to the outstanding balance of your loan.

**DEFAULT:** You will be in default on this Agreement if any one or more of the following occurs:
A. You fail to make a payment in full when due;
B. You die, are declared incompetent, or become insolvent;
C. You fail to keep any promise you have made in connection with this loan;
D. You fail to pay, or keep any other promise on, any other loan or agreement you have with us;
E. You make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
F. Any creditor of yours attempts to collect any debt you owe through court proceedings, set-off or self-help repossession;
G. The Property is damaged, destroyed, seized or stolen;
H. If you have given us a security interest in the Property, you fail to provide any additional security that we may require;
I. Any legal entity (such as a partnership or corporation) that has agreed to pay this Agreement merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or
J. Anything else happens that causes us to believe that we will have difficulty collecting the amount you owe us.
If any of you are in default on this Agreement, we may exercise our remedies against any or all of you.

**REMEDIES UPON DEFAULT:** If you are in default on this Agreement, we have all of the remedies provided by law and this Agreement:
A. We may require you to immediately pay the remaining unpaid balance of the loan, interest and all other agreed charges.
B. We may require you to make the Property available to us at a place we designate that is reasonably convenient to us.
C. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
D. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.
E. You agree to pay all reasonable costs of collection and enforcement of this Agreement, including our reasonable attorney's fees and legal expenses to the extent permitted by law.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or public sale or transfer of the Property, notice is reasonable if mailed to your last known address at least 10 days before the date of the intended sale. A public sale or transfer (or such other period of time as is required by law).

We may take possession of personal property left in or on the Property securing this Agreement and taken into possession as provided above, subject to any right you may have to recover the property under applicable law.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Agreement agrees to pay this Agreement according to its terms. This means the following:
A. You must pay this Agreement even if someone else has also signed it.
B. We may release any co-borrower or guarantor and you will still be obligated to pay this Agreement.
C. We may release any security and you will still be obligated to pay this Agreement.
D. If we give up any of our rights, it will not affect your duty to pay this Agreement.
E. If we extend new credit or renew this Agreement, it will not affect your duty to pay this Agreement.

**ASSIGNMENT:** You may not assign your rights or delegate your obligations under this Agreement. We may assign our rights and, upon receiving notice of an assignment, you agree to be obligated to any person or entity to whom we assign this Agreement, who shall have all of our rights and remedies.

**WAIVER:** You waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**OTHER AGREEMENTS:** (1) To the extent permitted by law, you agree that if we accept monies in sums less than those due or make extensions of due dates of payments under this Agreement, doing so will not be a waiver of our rights to enforce the Agreement terms as written as to any amounts due thereafter. (2) This Agreement sets forth all of the agreements between us and you, and this Agreement may only be modified in a writing signed by us and you, except as otherwise permitted by statute or required by law. (3) If this Agreement does not include an address for a Co-Borrower to this Agreement, you agree that notice to such Co-Borrower required or permitted by this Agreement or applicable law will be deemed sufficiently given or made if addressed to the Borrower's last known address reflected in our records and placed in a depository of the U.S. Postal Service, postage prepaid. (4) We may accept payments with "payment in full" or similar language without being bound by such language or waiving any of our rights. (5) This is a most favored lender loan made pursuant to federal law and the laws of the State of Ohio.

**DISBURSEMENT OF PROCEEDS:** We are authorized to disburse loan proceeds as indicated in the "Itemization of Amount Financed."

**DISBURSEMENT OF PROCEEDS:** We are authorized to disburse loan proceeds as indicated in the "Itemization of Amount Financed."

**NOTICE OF LIMITED AGENCY:** This loan is a direct loan from us to you. For your convenience, we have asked Seller to prepare and obtain your signature on this Agreement. Seller has no authority to approve or make this loan. Seller is not our agent in connection with the sale of the Property you are purchasing with the proceeds of this loan or in connection with any downpayment or trade-in arrangements or for any purpose whatsoever other than for preparing and obtaining your signature on this document. No employee or agent of Seller is authorized to make any promises or agreements with you about this loan. No oral or written promises or agreements between you and the Seller about this loan are enforceable. Any representations, promises, or agreements between you and Seller in connection with the Property you are purchasing or any downpayment or other matter in connection with the purchase must be resolved between you and Seller. If you have any questions about Seller's authority in connection with this loan, please contact us.

---

**THIRD PARTY AGREEMENT**

For the purposes of the provisions within this disclosure, "I," "me" or "my" means the person signing below and "you" means the lender identified on the front of this Agreement.

I agree to give you a security interest in the Property that is described on the front of this Agreement. I agree to the terms of this Agreement and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

Name_____   X_____

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

| VIN | KNDUP131646548210 | | | Financed | 06/29/2004 | Tech | FDI |
|---|---|---|---|---|---|---|---|
| Status | **Perfected Title Scanned** | | | Booked | 05/20/2004 | | |
| | | | | Work | 09/29/2004 | | |
| Borrower | REEVES VERNON E REEVES MILDRED M 160 SUNSET DR CLAY CITY, KY 40312- | | | Imported | 09/29/2004 | | |
| | | | | Added | 06/29/2004 | | |
| | | | | Perfected | 09/29/2004 | | |
| | | | | Payoff | / / | Tech | |
| | | | | Released | / / | | |
| Borrower Home Phone | (606) 663-2963 | | | Release Type | | | |
| | | | | Exported | / / | | |
| Borrower Work Phone | | | | Response | / / | Code | |
| Branch | 455 | Acct # | 2706748718 | Deleted | / / | | |
| Loan # | | Suffix | | Expires | / / | | |
| Owner | REEVES, VERNON E REEVES, MILDRED M | | | FDI Assigned User | | FDI Action Date | / / |
| Lienholder | CHARTER ONE AUTO FINANCE | | | Lienholder Assigned User | | Lienholder Action Date | / / |
| Dealer | 884946 | | | | | | |
| Year | 2004 | Make | KIA | Misc. | | | |
| License | | Title # | | State | KY | **Scanned** | |
| Body | | Vehicle Type | VEH | | | | |
| Mail Code | | User Defined Field | CHARTERONE | | | | |
| Account Type | **Financed (Loan)** | Loan Type | **Vehicle** | | | | |
| **User Notes Present** | | | | | | | |

[ Edit ]  [ More Details ]  [ Assign User/Action Date ]  [ Save Note ]  [ Release ]
[ Title Maintenance ]  [ ExplodeVIN ]  [ Responsibility ]  [ Click to see SIF ]

**Notes**

* LCESPOSITO * - 06/28/2004 09:07:39 AM PDT - SENT KY LIEN STATEMENT TO IMAGING

Record Activity for CITIZEN BK

FDI - Updated Dealer information for CHARTERONE records on 05/27/05.
CharterOne_Acct_Conv - System note on 11/05/04 06:16:42 PM by FDI:
Account Number Updated for Citizens CharterOne Merge. Old Account Number is 401429516
SCNDIMP - Status changed to PT on 09/29/2004 07:58:59 AM by FDI
SCNDIMP - System note on 09/29/2004 07:58:59 AM by FDI:
Imported SIF
VTTS - Status changed to PT on 06/29/2004 06:37 PM by FDI
VTTS - System note on 06/29/2004 06:37 PM by FDI:
Record Updated by TTA Type D Transaction.
VTTS - Status changed to PM on 05/20/2004 06:58 PM by FDI

| Lien Placement Activity |
|---|
|  |

# N.A.D.A. Official Used Car Guide
## Vehicle Summary N.A.D.A. Values
### 1/18/2008

| | | | | |
|---|---|---|---|---|
| Region: | Southeastern January, 2008 | Stock #: | | |
| Vehicle Description: | 2004 KIA Sedona-V6 Wagon LX | VIN: | KNDUP131646548210 | |
| MSRP: | $19,975 | Weight: | 4,802 | |
| Mileage: | 55,001 | | | |

| | Clean Retail | Clean Trade-In | Loan |
|---|---|---|---|
| **Base Value** | $9,425 | $7,600 | $6,850 |
| **Option Total** | $0 | $0 | $0 |
| **Mileage Adjustment** | $0 | $0 | $0 |
| **Total N.A.D.A. Official Used Car Guide Values** | $9,425 | $7,600 | $6,850 |

All N.A.D.A. values are reprinted with permission of
NADA Analytical Services Group Copyright © NADASC 2007